USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/7/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

KNOCKING INC.,

                           Plaintiff,

             -against-

CANDI CARTER, CISTUS MEDIA INC.,
COURTNEY SPENCER, and ANA PITCHER,

                        Defendants.

-------------------------------------------------------------X

24-CV-09020 (VEC)

OPINION & ORDER

**VALERIE CAPRONI, United States District Judge:**

Knocking Inc. ("Plaintiff" or "Knocking") sued Candi Carter, Cistus Media Inc. ("Cistus"), Courtney Spencer, and Ana Pitcher (collectively, "Defendants") for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.*  Prior to the lawsuit, Carter, a former employee of Plaintiff, launched Cistus, an e-commerce company that competes with Plaintiff.  Plaintiff alleges that Carter worked with Pitcher and Spencer, then employees of Plaintiff, to use Plaintiff's proprietary information to solicit Plaintiff's current and prospective media and brand partners.  Carter, Cistus, and Pitcher moved to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim.[1]  For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

---

[1]      Spencer answered the Complaint.  Dkt. 34.

## BACKGROUND[2]

Plaintiff is an e-commerce, media production, and marketing company that develops customized online marketplaces on behalf of media entities (Plaintiff's "media partners"). Compl., Dkt. 1, ¶¶ 3, 12–13.  Through those marketplaces, customers learn about and purchase products manufactured by Plaintiff's "brand partners."  *Id.* ¶ 13.  Plaintiff's business thus provides its media partners with a supplemental revenue stream and its brand partners with an additional sales channel.  *Id.* ¶ 15.

Carter and Pitcher are former employees of Plaintiff.  Carter served as Plaintiff's chief content officer from February 1, 2022, to February 1, 2024, during which time she was responsible for developing relationships with new media partners.  *Id.* ¶¶ 4, 30.  Pitcher reported directly to Carter during the final year of Carter's tenure with Plaintiff and provided consulting services as an independent contractor in Plaintiff's production department from October 2018 until her termination on November 15, 2024.  *Id.* ¶¶ 7, 55, 105.  At the outset of their employment by Plaintiff, Carter and Pitcher each signed agreements with non-compete and confidentiality provisions.  *Id.* ¶¶ 34, 106–107.

Shortly after Plaintiff and Carter parted ways, Carter created Cistus, a company that competes directly with Plaintiff.[3]  *Id.* ¶ 5.  On November 13, 2024, Cistus announced a partnership with the BET Network ("BET"), a media company.  *Id.* ¶ 68.  Approximately one year earlier, while they worked for Plaintiff, Carter and Pitcher had directed a Knocking employee to develop an internal pitch deck for Knocking to use to pitch for BET business.  *Id.* ¶¶

---

[2]    The Court presumes the truth of the well-pled factual allegations in the Complaint in assessing Defendants' motion to dismiss for failure to state a claim.  *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

[3]    Carter incorporated Cistus in Delaware on February 26, 2024.  Compl. ¶ 51.  On September 20, 2024, Plaintiff released Carter from her non-compete agreement but retained all rights to its own proprietary information.  *Id.* ¶¶ 43–44.  On October 1, 2024, Carter publicly announced the formation of Cistus.  *Id.* ¶ 67.

2

47–48.  Upon viewing the Cistus-BET marketplace, Plaintiff found that it contained products from many of Plaintiff's existing brand partners.  *Id*. ¶¶ 69–70.

Plaintiff claims that Defendants misappropriated its trade secrets to undercut Plaintiff's pricing and to pursue Plaintiff's current and prospective partners.  *Id.* ¶ 1.  Plaintiff's purported trade secrets include information exchanged between Plaintiff and its brand partners (e.g., product information, costs, and contact information for decision-makers at each brand); contractual terms between brand partners and Plaintiff; Plaintiff's revenues and profits associated with each brand partner and product; Plaintiff's go-to-market strategies for each brand partner; and Plaintiff's strategic plans to develop e-commerce platforms for potential media partners.  *Id.* ¶¶ 24–25.  Plaintiff alleges that Pitcher and Spencer, while employed by Plaintiff, provided Carter with those trade secrets, which Carter then used to further Cistus's business at Plaintiff's expense.  *Id*. ¶ 1.  In addition to its DTSA claim, Plaintiff brings a slew of state law claims.[4]  *Id.* ¶¶ 89–184.

Defendants Carter, Cistus, and Pitcher moved to dismiss all claims for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim.  *See* Def. Mot., Dkt. 35 (citing Fed. R. Civ. P. 12(b)(2), 12(b)(1), and 12(b)(6)).

## DISCUSSION

### I.    Standard of Review

To withstand a motion to dismiss under Rule 12(b)(2), the plaintiff must make a *prima facie* showing of personal jurisdiction.  *Chloé v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158,

---

[4]    Plaintiff asserts New York state law claims for misappropriation of trade secrets, tortious interference with contract, tortious interference with prospective economic relations, aiding and abetting, civil conspiracy, unjust enrichment, breach of contract, breach of the duty of loyalty, breach of the covenant of good faith and fair dealing, and attorneys' fees related to breach of contract.  Compl. ¶¶ 89–184.

163 (2d Cir. 2010).  This showing includes an averment of facts that, taken as true, would suffice to establish personal jurisdiction over the defendant.  *Id.*  The Court need not, however, resolve "argumentative inferences" in the plaintiff's favor or "accept as true a legal conclusion couched as a factual allegation."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citations omitted).  The exercise of personal jurisdiction must be founded in statutory authority and must fall within the boundaries of due process.  *Id.* at 59–60.

A motion to dismiss for lack of subject matter jurisdiction is properly granted when a court "lacks the statutory or constitutional power to adjudicate" the dispute.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A challenge to a plaintiff's constitutional standing at the pleadings stage is properly brought under Rule 12(b)(1).  *Cortlandt Street Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  The plaintiff bears the burden of demonstrating subject matter jurisdiction exists.  *Xia v. Bondi*, 137 F.4th 85, 89 (2d Cir. 2025).

To survive a motion to dismiss for failure to state a claim, Plaintiff must produce a complaint with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In evaluating a 12(b)(6) motion, the Court construes the complaint liberally and draws all reasonable inferences in the light most favorable to the plaintiff.  *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

## II.   The Court Has Personal Jurisdiction Over Carter and Cistus But Lacks Personal Jurisdiction Over Pitcher

To establish a statutory basis for personal jurisdiction, Plaintiff must show Defendants' conduct falls within the scope of New York's long-arm statute.  *Licci,* 673 F.3d at 59–60; *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) ("A district court's personal jurisdiction is determined by the law in which the court is located.").  The Complaint alleges two footholds for

4

jurisdiction: Sections 302(a)(1) and 302(a)(2) of the New York Civil Practice Law and Rules. Compl. ¶ 11.  Under those provisions, a court may exercise personal jurisdiction over a non-domiciliary who: "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state;" or "(2) commits a tortious act within the state . . . ."  N.Y. C.P.L.R. §§ 302(a)(1)–(2).  Further, Plaintiff must show its cause of action "aris[es] from" those acts.[5]  N.Y. C.P.L.R. § 302(a).

The demands of due process present another hurdle to the exercise of personal jurisdiction.  A state may authorize personal jurisdiction over an out-of-state defendant only if "the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (internal quotation marks omitted) (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)).  The critical inquiry "is whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,'" such that the defendant "should reasonably anticipate being haled into court there."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75 (1985)).[6]

---

[5]    A cause of action arises out of a defendant's New York act if there is a "substantial relationship" or "articulable nexus" between the claim and the act.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citation omitted); *see also Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985) ("[P]laintiffs need show only that the cause of action is sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business . . . .").

[6]    Even if the exercise of personal jurisdiction is statutorily and constitutionally sanctioned, a motion to dismiss for lack of personal jurisdiction can be granted if the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

**A.  Carter and Cistus Are Subject to Personal Jurisdiction Pursuant to C.P.L.R. Section 302(a)(1)**

A court assessing whether it may exercise personal jurisdiction pursuant to Section 302(a)(1) looks to the totality of the defendant's activity in the forum to determine whether the alleged transactions constitute purposeful activity.  *See Best Van Lines*, 490 F.3d at 246.  New York's long-arm statute is a single-act statute, meaning that a sole, purposeful transaction may be sufficient for jurisdiction.  *Deutsche Bank Sec., Inc.*, 7 N.Y.3d 65, 71 (2006); *see also Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276–77 (2d Cir. 2024).

Plaintiff has sufficiently pled that the Court has personal jurisdiction over Carter and Cistus under Section 302(a)(1).  *See* N.Y. C.P.L.R. § 302(a)(1).  The Complaint alleges that Carter and Cistus knowingly solicited and entered into business agreements with companies that operate in New York, Compl. ¶ 10, and that those solicitations culminated in the Cistus-BET webstore, *id.* ¶ 1.  Carter and Cistus thus actively sought out the New York market, purposefully availing themselves of the privilege of conducting business in this state.  Plaintiff's DTSA claim has a "substantial relationship" to those transactions, as Plaintiff alleges Carter and Cistus misappropriated Plaintiff's trade secrets when soliciting business from Plaintiff's partners.  *Best Van Lines*, 490 F.3d at 246 (citation omitted).

The constitutional inquiry is similarly satisfied.  Carter's and Cistus's New York transactions supply the requisite minimum contacts with the forum, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013), and Defendants do not present additional considerations that would render the exercise of jurisdiction unreasonable.[7]  Def.

---

[7]     Defendants argue they lack the requisite minimum contacts, relying on a Connecticut choice-of-law provision within Carter's employment contract and Plaintiff's Delaware place of incorporation to support their contention that they could not reasonably anticipate being haled into court in New York.  Def. Mem. at 10–11.  Defendants, however, correctly acknowledge that choice-of-law provisions, standing alone, are not dispositive in

Mem., Dkt. 36, at 11. *See Richardson v. Nat'l R.R. Passenger Corp.*, No. 21-CV-09202, 2022 WL 3701492, at *4 (S.D.N.Y. Aug. 26, 2022) (finding personal jurisdiction constitutionally permissible where plaintiff established minimum contacts and defendant failed to address the reasonableness prong of the due process inquiry). Accordingly, the motion of Carter and Cistus to dismiss for lack of personal jurisdiction is denied.

### B. The Court Lacks Personal Jurisdiction over Pitcher

#### 1. C.P.L.R. Section 302(a)(1)

As relevant to Plaintiff's claim against Pitcher, Section 302(a)(1) extends jurisdiction over a non-domiciliary who transacts business within New York. Plaintiff's factual allegations as to Pitcher are insufficient under Section 302(a)(1) to establish jurisdiction. The Complaint alleges Pitcher's involvement in Cistus's transactions with New York media and brand partners through vague, conclusory statements[8] that invite the Court to follow innuendo over fact. Compl. ¶¶ 59–65. Those statements present argumentative inferences and legal conclusions that this court is not required to make. *Licci*, 673 F.3d at 59. For example, the Complaint asserts that Pitcher and Carter attended a meeting with a manufacturing company in preparation for the launch of Cistus. Compl. ¶ 61. There are no underlying facts pled regarding this event, however, to suggest that Pitcher uttered so much as a single word during the meeting or that the meeting

---

personal jurisdiction determinations. *Burger King,* 471 U.S. at 482; Def. Mem. at 11. Further, Defendants' forum contacts — not Plaintiff's — are the relevant ones in the minimum contacts inquiry. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

[8]     "Pitcher . . . regularly traveled to New York, at Knocking's expense, for the stated purpose of working to develop Knocking's business while, in truth, supporting Carter and Cistus' business development and video production activities." Compl. ¶ 59. "Rather than accompanying the Knocking team . . . Pitcher accompanied Carter to a business meeting with a U.S. manufacturing company, in early preparation for the launch of Cistus . . ." *Id.* ¶ 61. "Notably, from October 29, 2024 to November 13, 2024 (*i.e.* the launch of the Cistus/BET e-commerce web shop), Pitcher was uncharacteristically unavailable to work for Knocking." *Id.* ¶ 62. "Carter emailed Pitcher . . . what appears to be a confidential simple agreement for future equity [for Cistus] . . . with a note that Cistus had received Forty Thousand Dollars ($40,000.00) in financing." *Id.* ¶ 65.

was anything more than exploratory.  Attendance at preliminary meetings, without more, does not amount to a *prima facie* showing of the transaction of business necessary to establish jurisdiction under Section 302(a)(1).  *V Cars, LLC v. Isr. Corp.*, 902 F. Supp. 2d 349, 361–62 (S.D.N.Y. 2012); *see also PaineWebber Inc. v. WHV, Inc.*, No. 95 Civ. 0052, 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995) (occasional business meetings in New York that were "exploratory, unproductive, or insubstantial" were insufficient to establish requisite minimum contacts under Section 302(a)(1)).

> 2.  C.P.L.R. Section 302(a)(2)

Section 302(a)(2), which extends jurisdiction over a defendant who commits a tortious act or omission within New York, typically requires the tortfeasor's physical presence in the state.  *Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 468–69 (S.D.N.Y. 2022).  An out-of-state defendant may, however, be deemed responsible for another's tortious conduct within New York through jurisdictional theories of agency or conspiracy.  *Paige v. Digit. Bus. Networks All., Inc.*, No. 24-CV-3169, 2025 WL 753952, at *9 (S.D.N.Y. Mar. 10, 2025); *see also LaChapelle v. Torres*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014).  If a plaintiff alleges a primary tort, the plaintiff must also make a *prima facie* showing of conspiracy in order to establish conspiracy-based personal jurisdiction over an out-of-state defendant.[9]  *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986); *see also LaChapelle*, 1 F. Supp. 3d at 170.  A plaintiff must also allege facts tending to show that the out-of-state defendant is a member of that conspiracy by showing (1) the defendant was aware that the conspiracy produced effects in New

---

[9]    Common law conspiracy consists of four elements: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of the plan or purpose; and (4) the resulting damage or injury.  *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986); *see also LaChapelle*, 1 F. Supp. 3d at 170.

York; (2) the co-conspirators in New York acted to the benefit of the out-of-state conspirators; and (3) the co-conspirators who were acting in New York did so at the direction or under the control of, or at the request or on behalf of, the out-of-state conspirator.[10]  *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 126 (2d Cir. 2023); *see also LaChapelle*, 1 F. Supp. 3d at 170; *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981) (stating an alleged agent must act in New York "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal").

Plaintiff has failed to allege adequately that Pitcher is subject to jurisdiction under Section 302(a)(2) as a co-conspirator of Carter and Cistus.[11]  Even assuming, *arguendo*, that Plaintiff has succeeded in alleging Carter's commission of a tort[12] and a conspiracy to commit it, the Complaint falls short of adequately alleging Pitcher's membership in the conspiracy for the purposes of personal jurisdiction.  Although Plaintiff's allegations about Pitcher's involvement (described in the preceding section) tend to show overt acts in furtherance of a conspiracy, Compl. ¶¶ 57, 59–65, they are insufficient to establish that Pitcher was aware of the effects of her activity in New York.  *See Fat Brands*, 75 F.4th at 126.  At most, those allegations raise an argumentative inference of Pitcher's awareness — one that the Court is not permitted to resolve in Plaintiff's favor.  *Licci*, 673 F.3d at 59.  Bare conclusory assertions of Pitcher's "actual

---

[10]     The third element "may be satisfied by an allegation that the out-of-state defendant was 'aware of the torts being committed by' co-conspirators in New York."  *Fat Brands*, 75 F.4th at 127 (citation omitted).

[11]     Plaintiff rests entirely on a conspiracy theory to argue that Pitcher is subject to personal jurisdiction under Section 302(a)(2).  *See* Compl. ¶¶ 10–11; Pl. Mem., Dkt. 49, at 8–9.  As a result, the Court does not evaluate whether Pitcher may be subject to personal jurisdiction independently through her own alleged tortious acts in New York.

[12]     The Complaint notes two torts as potential bases for jurisdiction: (1) common law misappropriation of trade secrets (Count II); and (2) tortious interference with prospective economic relationships (Count IV).  Compl. ¶¶ 10–11; Pl. Mem. at 8.  Those state law claims are addressed *infra*.

knowledge," Compl. ¶ 128, are no substitute for underlying factual support.  Plaintiff also insufficiently pled the second and third elements required to show Pitcher is a co-conspirator, as there is little in the Complaint to suggest that Carter and Cistus worked to benefit Pitcher or acted at her direction.  *See Fat Brands*, 75 F.4th at 126.  Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction as to Pitcher is granted.

## III.    Plaintiff Has Standing To Sue For Misappropriation Of Its Trade Secrets

Article III standing requires a plaintiff to demonstrate "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant,[13] and (iii) that the injury likely would be redressed by the requested judicial relief." *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024); *see also Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Injury-in-fact is considered "a low threshold," *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citation omitted), and is established by "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent," *Lujan,* 504 U.S. at 560 (citations omitted).

Although Article III standing is a jurisdictional matter, statutory standing "is itself a merits question."  *Gordon Surgical Grp., P.C., v. Empire HealthChoice HMO, Inc.*, 724 F. Supp. 3d 158, 189 (S.D.N.Y. 2024).  In essence, motions to dismiss for lack of statutory standing require courts to determine whether a plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue" under a statute.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).

---

[13]    The injury must be "fairly traceable" to the challenged action of the defendant.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### A. Plaintiff Has Article III Standing

Defendants argue Plaintiff lacks constitutional standing because Plaintiff's claimed trade secrets belong not to Plaintiff but instead to its brand partners. Def. Mem. at 11–13. Defendants assert that Plaintiff is a mere nonexclusive licensee of its brand partners' information and, therefore, could not have suffered an injury resulting from that information's alleged misappropriation. *Id.* Defendants rely on Federal Circuit law for the proposition that a party must hold rights beyond those of a nonexclusive licensee to establish injury-in-fact. *Id.*

Defendants' argument is flawed, first and foremost, because it conflates Article III and statutory standing and improperly imports requirements of the Patent Act to the DTSA. Defendants rely on *Sicom* for their central assertion that a "nonexclusive license confers no constitutional standing on the licensee to bring suit . . . because a nonexclusive licensee suffers no legal injury from infringement." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). The *Sicom* court construed a statutory standing defect under the Patent Act[14] as a constitutional one. The Supreme Court, however, subsequently clarified that the absence of statutory standing "does not implicate subject-matter jurisdiction." *Lexmark*, 572 U.S. at 128 n.4 (citation omitted). In the wake of *Lexmark*, the Federal Circuit has since acknowledged that some of its pre-2014 cases — such as *Sicom* — erred in conflating Patent Act and Article III standing requirements. *See Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020) ("[I]ntervening Supreme Court precedent made clear that our earlier decisions treating the prerequisites of the Patent Act as jurisdictional were wrong."); *Lone Star*

---

[14]    The Patent Act restricts statutory standing for infringement suits to a "patentee," 35 U.S.C. § 281, defined as "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100.

*Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019) ("*Lexmark* is irreconcilable with our earlier authority treating § 281 [of the Patent Act] as a jurisdictional requirement.").

Plaintiff has cleared the low threshold to allege injury-in-fact. Plaintiff alleges that Defendants, by disclosing and using Plaintiff's trade secrets, violated confidentiality and non-compete provisions within their Employment Agreements. Compl. ¶¶ 1, 157, 163–64. Those violations constitute an "invasion of a legally protected interest." *Lujan,* 504 U.S. at 560; *see also KCG Holdings, Inc. v. Khandekar*, No. 17-CV-3533, 2020 WL 1189302, at *8 (S.D.N.Y. Mar. 12, 2020) (employee's breaches of contractual confidentiality provisions injured employer). Plaintiff further alleges that Defendants used its confidential information to undercut Plaintiff's competitive advantage in the market, Compl. ¶ 71, and to divert future business from Plaintiff, *id.* ¶ 120, both concrete injuries resulting from the alleged misappropriation. *See Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 151 (1970) (finding harm to competitive positioning is economic harm sufficient to constitute an injury-in-fact); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (describing reputational harms and disclosure of private information as sufficient injuries-in-fact).[15]

In short, Plaintiff has adequately alleged that it has Article III standing, and Defendants' motion to dismiss under Rule 12(b)(1) is denied.

---

[15]    *See also JPMorgan Chase Bank, Nat'l Assoc. v. Argus Info. & Advisory Servs., Inc.*, 765 F. Supp. 3d 367, 374 (D. Del. 2025) (finding Article III standing because "misappropriation of trade secrets is itself a concrete injury; no further harm is needed").

**B.  Plaintiff Has Statutory Standing As To the Alleged Trade Secrets It Owns**

In order to bring a DTSA action, Plaintiff must be an "owner" with respect to the trade secrets at issue. 18 U.S.C. § 1836(b)(1).  "[T]he person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed" is the owner of the trade secret.  18 U.S.C. § 1839(4).[16]  Defendants argue that Plaintiff lacks statutory standing under the DTSA because Plaintiff is a "nonexclusive licensee" of its brand partners' information and is therefore not an "owner" of the claimed trade secrets.  Def. Mem. at 13–14.

Defendants' position relies on an underinclusive description of Plaintiff's alleged trade secrets.  Plaintiff alleges its trade secrets encompass not only information exchanged between Plaintiff and its brand partners (e.g., product information, costs, and contact information for decision-makers at each brand), but also Plaintiff's contractual terms with partners, Plaintiff's revenue and profit data associated with each brand partner and product, and Plaintiff's strategic plans for its brand and media partners.  Compl. ¶¶ 24–25.  Defendants are correct that Plaintiff lacks legal or equitable title in the information shared by its brand partners.[17]  *See Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 419–22 (S.D.N.Y. 2021) (individual plaintiff lacked statutory standing as an "owner" because plaintiff himself was neither an equitable nor legal title holder of an allegedly misappropriated index).[18]

---

[16]    Equitable title is a "title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title."  *Equitable Title*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[17]    Although other courts have afforded a more generous definition of an "owner" of a trade secret, those cases are readily distinguishable. *See Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 511 F. App'x 54, 55 (2d Cir. 2013) (unpublished) (in a common law misappropriation case not subject to the DTSA's statutory standing requirements, sole *possession* of a trade secret was held sufficient for standing).

[18]    *See also Focused Impressions, Inc. v. Sourcing Grp., LLC*, No. 19-cv-11307, 2020 WL 1892062, at *5 (D. Mass. Apr. 16, 2020) (no standing where plaintiff simply possessed "pricing information that belonged to its clients and did not itself own that information").

Accordingly, Defendants' motion is granted only insofar as the brand-specific information that Plaintiff received from its brand partners does not belong to Plaintiff. Defendants' motion is denied as to Plaintiff's remaining claimed trade secrets (i.e., Plaintiff's strategic plans, contractual terms Plaintiff negotiates with each brand partner, and Plaintiff's data on profitability and sales through its e-commerce work). Compl. ¶¶ 24–25.

## IV.    Plaintiff Has Adequately Pled a DTSA Claim

To state a claim under the DTSA, Plaintiff must allege: (1) the existence of a trade secret and (2) misappropriation of that secret. *Ahmad v. Day*, No. 20-CV-4507, 2023 WL 3847144, at *6 (S.D.N.Y. June 6, 2023).

The DTSA defines "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information" provided that: (1) "the owner thereof has taken reasonable measures to keep such information secret;" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *ExpertConnect, L.L.C. v. Fowler*, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, at *4 (S.D.N.Y. July 10, 2019) (quoting 18 U.S.C. § 1839(3)).   Although DTSA claims do not face a heightened pleading requirement, *Tesla Wall Sys., LLC v. Related Companies, L.P.*, No. 17-CV-5966 (JSR), 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 18, 2017), trade secrets must be alleged with "sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Zabit,* 540 F. Supp. 3d at 422 (citation omitted); *cf. Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 404 (S.D.N.Y. 2021) ("Alleging the existence of general categories of confidential information, without providing any details to generally define

the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence." (citation omitted)).

A trade secret is misappropriated when it is acquired by a person "who knows or has reason to know that the trade secret was acquired by improper means" or is disclosed or used "without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret."  18 U.S.C. § 1839(5)(A)–(B).  "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  18 U.S.C. § 1839(6)(A).

### A.  Plaintiff Adequately Pled the Existence of Trade Secrets

As to the first element, Plaintiff's description of its misappropriated trade secrets, though perhaps "broad," nevertheless provides sufficient detail for Defendants to "understand what they are alleged to have misappropriated."  *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 251 (S.D.N.Y. 2023).  Plaintiff's list of the categories of alleged trade secrets is sufficiently specific to survive a motion to dismiss.  *See Tesla*, 2017 WL 6507110, at *9 (finding a trade secret sufficiently described under DTSA where the complaint "pleads numerous specific categories of information, such as technical data, internal pricing information, work product, research, [and] engineering designs" (citation modified)); *ExpertConnect*, 2019 WL 3004161, at *4 (finding "client lists and client preferences, contract details, expert lists and performance criteria" sufficiently specific).

Plaintiff also alleges it used reasonable measures to protect the secrecy of its alleged proprietary and confidential information "by maintaining it in secure/password protected databases and software," "siloing its various teams such that information is only shared on an as-needed basis," and "requiring its employees to sign [a] binding and enforceable confidentiality

provision as a material condition of their employment." Compl. ¶¶ 26–27. Accordingly, Plaintiff has adequately alleged that it took reasonable steps to keep the information at issue confidential. *See Rodney v. United Masters*, No. 21 CV 5872 (DG)(LB), 2023 WL 2184865, at *5 (E.D.N.Y. Feb. 10, 2023) (reasonable measures to maintain confidentiality include confidentiality agreements, password protection, limitations on information sharing, and relevant provisions in an employee handbook).

Finally, Plaintiff alleges its trade secrets have independent economic value "as they represent a significant amount of Knocking's goodwill, prior investment into market research and business development." Compl. ¶ 79. Investment in the development of private information that grants a competitive advantage to its holder creates independent economic value. *See Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 381 (S.D.N.Y. 2020) (plaintiff sufficiently pled the value of its trade secrets by alleging that it "expended considerable resources, both financial and in personnel time, developing this non-public information"). Plaintiff's allegations that Defendants used its trade secrets to undercut its pricing further support its contention that the information has monetary value. *ExpertConnect*, 2019 WL 3004161, at *5 (finding independent economic value sufficiently alleged where plaintiff invested "significant amounts of time and money" developing its trade secrets and where the information could be leveraged to "underprice [Plaintiff] and divert customers").

**B. Plaintiff Adequately Pled That Its Trade Secrets Were Misappropriated**

As to the second element, Plaintiff's allegations that its trade secrets were shared and used in violation of confidentiality provisions in Defendants' employment agreements, Compl. ¶¶ 157, 164, suffice to allege misappropriation through "improper means." *KCG Holdings*, 2020 WL 1189302, at *10 (finding the defendant acquired trade secrets through improper means

16

because, in doing so, the defendant breached confidentiality provisions of his employment agreement).

Accordingly, Defendants' motion to dismiss Plaintiff's DTSA claim is denied.

**V.    Plaintiff Has Adequately Alleged Certain State Law Claims But Not Others**

Defendants moved to dismiss all of Plaintiff's state law claims (Counts II-XIII of the Complaint).[19]  Def. Mem. at 21–26.

**A.  Plaintiff Has Adequately Pled Common Law Misappropriation of Trade Secrets (Count II)**

To state a claim for common law misappropriation of trade secrets, the complaint must allege that Plaintiff "possessed a trade secret,"[20] and that Defendants "used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means."  *SS&C Techs. Holdings, Inc. v. Arcesium LLC*, 2024 U.S. Dist. LEXIS 230686, at *4 (S.D.N.Y. Dec. 20, 2024) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999)).  The elements of a common law misappropriation claim are substantially similar to those of a claim under the DTSA.  *See Iacovacci*, 437 F. Supp. 3d at 380 (stating a DTSA claim "also states a claim for misappropriation of trade secrets under New York law" (citation omitted)).  Thus, for the same reasons Plaintiff's pleading of a DTSA claim was sufficient (discussed *supra*), Plaintiff's common law misappropriation claim also passes muster.

---

[19]    Because Plaintiffs have failed to allege facts sufficient to establish personal jurisdiction over Pitcher, and Spencer did not move to dismiss, the Court considers only the state law claims asserted against Carter and Cistus.

[20]    At common law, a "trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it."  *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999) (citation and internal quotation marks omitted).  In determining what counts as a trade secret, New York courts consider: "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."  *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993) (citation modified).

**B. Plaintiff Has Adequately Pled Tortious Interference With Contract (Count III)**

To state a tortious interference with contract claim, Plaintiff must allege facts that tend to show "(i) the existence of a contract; (ii) defendants' knowledge of that contract; (iii) defendants' intentional inducement of a breach of that contract; (iv) a breach; (v) but for the defendants' actions, that contract would not have been breached; and (vi) damages." *Conte v. Emmons*, 895 F.3d 168, 171 (2d Cir. 2018). Plaintiff alleges Carter tortiously interfered with Plaintiff's employment agreements with Pitcher and Spencer by inducing them to violate their non-compete and confidentiality provisions. Compl. ¶¶ 98–114. Plaintiff has pled the existence of employment contracts; Carter's knowledge of those contracts and their contents in her capacity as a former employee who hired others pursuant to their terms; Carter's intentional inducement of Pitcher's and Spencer's breaches; and actual breach (i.e., that Pitcher and Spencer did disclose trade secrets to Carter). *Id.* ¶¶ 98–112. Carter was causally instrumental in the breach, and Plaintiff pled resulting "loss of pecuniary benefits and goodwill."[21] *Id.* ¶ 113. Accordingly, Defendants' motion to dismiss the tortious interference with contract claim is denied.

---

[21] Plaintiff alleges "loss of pecuniary benefits and goodwill" arising from both Carter's alleged tortious interference with contract and the other Individual Defendants' breaches of those contracts. Compl. ¶¶ 113, 167. A claim for tortious interference cannot allege identical damages to those alleged in a related breach of contract claim. *See Radar Sports Mgmt., LLC v. Legacy Lacrosse, LI Inc.*, No. 21-CV-5749, 2023 WL 7222736, at *10–11 (E.D.N.Y. Nov. 2, 2023). The lost pecuniary benefits and goodwill that flow from the tortious interference could conceivably differ from those same categories of damages that flow from Defendants' alleged breach of contract. If, after discovery, the damages are indeed identical, Plaintiff will be permitted to proceed under only one of the claims.

### C. Plaintiff Has Not Adequately Pled Tortious Interference With Prospective Economic Relations (Count IV)

To plead a claim for tortious interference,[22] Plaintiff must allege facts that tend to show:

"(1) that [it] had a business relationship[23] with a third party; (2) that the defendants knew of that relationship and intentionally interfered with it; (3) that the defendants either acted solely out of malice or used wrongful means[24]; and (4) that the defendants' interference caused injury to the relationship with the third party." *Berwick v. New World Network Int'l, Ltd.*, No. 06 CIV. 2641 JGK, 2007 WL 949767, at *14 (S.D.N.Y. Mar. 28, 2007). Plaintiff must also allege facts that tend to show it "would have entered into an economic relationship but for the defendant's wrongful conduct." *Zikakis v. Staubach Retail Servs., Inc.*, No. 04 Civ. 9609, 2005 WL 2347852, at *4 (S.D.N.Y. Sep. 26, 2005) (citation omitted); *see also Bruce Bzura, LLC v. Moss*, No. 17-CV-813, 2018 WL 7858772, at *3 (S.D.N.Y. Oct. 25, 2018) ("[T]he defendant must target some activities toward the third party and convince them not to enter into a continuing business relationship with the plaintiff."). Plaintiff alleges Defendants tortiously interfered with "prospective relations with media partners like BET," Compl. ¶ 118, and "future business with . .

---

[22]    Although courts refer to this tort by many alternative names (e.g., tortious interference with "prospective business relations," "prospective economic advantage," "prospective contractual relations"), the various-named torts have the same elements. *Berwick v. New World Network Int'l, Ltd.*, No. 06 CIV. 2641 JGK, 2007 WL 949767, at *14 n.11 (S.D.N.Y. Mar. 28, 2007); *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 465 n.23 (S.D.N.Y. 2006).

[23]    A "business relationship" is a non-contractual association that must be ongoing "*at the time of* defendant's interference" to give rise to this tort. *Henneberry*, 415 F. Supp. 2d at 468–69 (S.D.N.Y. 2006); *see also Popat v. Levy*, 253 F. Supp. 3d 527, 546 (W.D.N.Y. 2017) (practice of medical patient referrals between two parties established a business relationship); *Milton Abeles, Inc. v. Farmers Pride, Inc.*, No. 03-CV-6111, 2007 WL 2028069, at *4 (E.D.N.Y. July 11, 2007) (oral agreement to do business between two parties on an order-by-order basis established same).

[24]    To constitute wrongful means, "the defendant's conduct must amount to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).

. existing brand partners" by "redirecting their business towards Cistus' media partner BET" and undercutting Plaintiff's market position with those brands, *id.* ¶ 120.

Plaintiff has failed to allege a *prima facie* claim of tortious interference.  Despite Plaintiff's development of a pitch deck for BET, *id.* ¶¶ 47–48, the Complaint alleges no facts that tend to show that there was an existing relationship or even any ongoing negotiations between BET and Plaintiff.  *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 468 (S.D.N.Y. 2006).  Further, Plaintiff pleads no facts from which the Court can plausibly infer that it would have entered into a partnership with BET but for the Defendants' interference.  *See Zikakis*, 2005 WL 2347852, at *4.  As to Plaintiff's existing relationships, Plaintiff has not adequately pled injury.  The Complaint pleads only generalized economic harm of redirected business and undercut market position, Compl. ¶ 120, rather than, for example, loss of existing brand partners or diminished negotiation leverage as a result of Defendants' actions.  Because "injury to the relationship with the third party" is required to state a claim, *Berwick*, 2007 WL 949767, at *14, Plaintiff's tortious interference with prospective economic relations claim is dismissed as to Carter and Cistus.

### D.  Plaintiff Has Adequately Pled Unjust Enrichment (Count IX)

Plaintiff's above-detailed allegations of trade secret misappropriation and associated lost market position, Compl. ¶¶ 148–151, state a claim: (1) that Cistus benefitted; (2) at Plaintiff's expense; and (3) "that equity and good conscience require restitution." *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, 749 F. Supp. 3d 456, 472 (S.D.N.Y. 2024) (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)).  Accordingly, Defendants' motion to dismiss Plaintiff's unjust enrichment claim is denied.

20

### E.  Plaintiff Has Adequately Pled Breach of Contract (Count X) and Breach of the Covenant of Good Faith and Fair Dealing (Count XII)

To state a claim for breach of contract, Plaintiff must allege that: (1) "a contract exists;" (2) "plaintiff performed in accordance with the contract;" (3) "defendant breached its contractual obligations;" and (4) "defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022) (citations omitted).  Plaintiff adequately alleges that Carter breached contractual confidentiality provisions by using Plaintiff's claimed trade secrets to further Cistus's business, and that Plaintiff performed its duties under its agreements with Carter. Compl. ¶¶ 153–58.  Plaintiff also alleges damages resulting from the breach.  *Id.* ¶¶ 167–68.

Under New York law, the implied covenant of good faith and fair dealing inheres in every contract.  *MeehanCombs Glob. Credit Opportunities Funds v. Caesars Ent. Corp.*, 80 F. Supp. 3d 507, 514 (S.D.N.Y. 2015) (citing *Travellers Int'l., A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994)).  Breach of the implied covenant is merely a breach of the underlying contract and is not a separate cause of action.  *Id.*  Plaintiff adequately alleges that Carter breached the covenant of good faith and fair dealing, *see* Compl. ¶¶ 176–80, but if Plaintiff ultimately succeeds on its breach of contract claim, it cannot also proceed on its claim for breach of the implied covenant.

### F.  Plaintiff's Alleged Contractual Entitlement To Attorneys' Fees Does Not Give Rise to a Cause of Action (Count XIII)

Plaintiff asserts a cause of action for attorneys' fees on the theory that the allegations of Carter's contractual breaches (detailed in Count X) support an independent action to recover legal expenses.  Compl. ¶¶ 181–184.  Plaintiff's claim appears to originate from the correct set of

basic legal principles and facts.[25]  Attorneys' fees are recoverable under New York law when provided for by statute or contract.  *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597 (2004).  Carter's employment agreement contains a provision that awards attorneys' fees to the "prevailing party" in an action related to the contract.  Herstoff Decl., Dkt. 37, Ex. B, Dkt. 37-2, ¶ 9.5.

Plaintiff's claim for attorneys' fees, however, is premature.  The fee-shifting provision within Carter's employment agreement applies to a "prevailing party."  Although the Court has denied Defendants' motion to dismiss Plaintiff's breach of contract claim, Plaintiff has not prevailed on that claim.  A standalone claim for attorneys' fees will ripen only upon the failure of the losing party to remit payment.  *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) ("A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citation and internal quotation marks omitted)).  Because no litigant has yet prevailed, there has been no opportunity for the relevant party to fail to comply with the obligations under the fee-shifting provision.

Accordingly, Plaintiff's claim for attorneys' fees is dismissed without prejudice.[26]

---

[25]    This is more than can be said for Defendants' motion to dismiss Count XIII.  *See* Def. Mem. at 26. Defendants cling to the general rule that a prevailing litigant may not recover attorneys' fees unless provided for by statute or contract — all while failing to acknowledge that attorneys' fees have indeed been provided for in Carter's employment contract.  *Id.*

[26]    The Court's dismissal of Plaintiff's standalone attorneys' fees claim does not preclude Plaintiff from asserting that it is entitled to attorneys' fees as damages for its breach of contract claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is especially so where, as here, the Court has not previously weighed in on "the precise defects" of the pleading. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 191 (2d Cir. 2015). Plaintiff is granted leave to file an Amended Complaint addressing the deficiencies identified in this Opinion. Any such amended complaint must be filed not later than **Friday, August 29, 2025**, and Plaintiff is reminded that the Undersigned's Individual Practices in Civil Cases require it to file a redlined version of the Amended Complaint comparing the revisions made to the Complaint, as well as a clean copy of the Amended Complaint.

The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 35.

**SO ORDERED.**

Date:  **August 7, 2025**
          **New York, New York**

_____
          **VALERIE CAPRONI**
          **United States District Judge**